



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street, 3rd floor*
*New York, NY 10007*

**MEMO ENDORSED**

April 23, 2021

**By ECF**

Hon. Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

      Re:   *Torres v. Commissioner of Social Security*,
              No. 20 Civ. 9579 (BCM)

Dear Judge Moses:

        This Office represents Andrew M. Saul, the Commissioner of Social Security (the "Commissioner"), the defendant in the above-referenced action brought pursuant to 42 U.S.C. § 405(g), in which the plaintiff challenges a decision to deny her application for Social Security disability benefits.

        I respectfully write to request a 60-day extension of time for the Commissioner to file the certified administrative record in this case, from April 23, 2021, to June 22, 2021. The Court previously granted the Commissioner a prior request for a 60-day extension of time to file the certified administrative record, but ordered that no further extensions of the deadline to file the record would be granted absent compelling circumstances. (Dkt. No. 15.) I apologize for the need to seek a second extension of time to file the record, and I have sought to expedite the preparation of this record, but I respectfully submit that compelling circumstances exist here to justify an additional extension.

        The COVID-19 pandemic has significantly impacted the operations of the Social Security Administration ("SSA") and its Office of Appellate Operations ("OAO") and materially affected its ability to prepare certified administrative records and to obtain transcriptions of hearing recordings from private contractors. As described in the Declaration of Jebby Rasputnis, dated March 17, 2021, beginning in mid-March 2020, the SSA restricted physical access to its physical buildings. (Rasputnis Decl. ¶ 2.) Since that time, OAO has been working to overhaul, redo, refine, and streamline its business processes to continue operations remotely. (Rasputnis Decl. ¶ 2.) It has now reached and surpassed pre-pandemic levels of production of electronic certified administrative records. (Rasputnis Decl. ¶ 2.) However, while the OAO transitioned to a virtual process, the number of new cases filed in federal court also increased, creating a significant backlog that the OAO is still working to address. (Rasputnis Decl. ¶¶ 3-5.)

        As a result, I respectfully request that the Court grant the Commissioner's request for a second 60-day extension of time to file the certified administrative record in this case, on consent of the parties. I thank the Court for its consideration of this request.

>Respectfully,
>
>AUDREY STRAUSS  
>United States Attorney
>
>BY:   /s/ Amanda F. Parsels  
>      AMANDA F. PARSELS  
>      Assistant United States Attorney  
>      Tel.: (212) 637-2780  
>      Cell: (646) 596-1952  
>      Email: amanda.parsels@usdoj.gov

cc:     Vanessa Serrano Torres (by mail)  
         *Plaintiff* Pro Se

DECLARATION OF JEBBY RASPUTNIS
OFFICE OF APPELLATE OPERATIONS
SOCIAL SECURITY ADMINISTRATION

I, JEBBY RASPUTNIS, Executive Director of the Social Security Administration's Office of Appellate Operations (OAO), declare and state as follows:

1) My office is responsible for, among other things, preparing certified copies of administrative records (CARs) for Federal court review when claimants appeal the final decisions of the Commissioner of Social Security.

2) Beginning in mid-March of 2020, the Social Security Administration (agency) restricted physical access to our buildings because of the COVID-19 pandemic.  Since that time, OAO has been working to overhaul, redo, refine, and streamline our business processes to continue operations and meet our mission to serve the public.  Despite many challenges in transitioning to a completely new business process, we have reached and surpassed pre-pandemic levels of electronic CAR production.  Much of the delay and uncertainty in the CAR production process has stemmed from how we transmit hearing recordings to our vendors, and how our vendors return completed transcripts to us.  We have worked hard to refine this process as well as implementing new processes, updating vendor agreements, and making staffing changes.  These included:

- reworking how we transmit the audio files to our vendors from a fully in-person exchange of CDs and completed transcripts to a now fully direct access and electronic exchange of completed transcripts;

- seeking additional vendor capacity; and

- leveraging in-house transcription capacity by establishing a transcription cadre with updated technology and working with agency closed captioners.

Page **1** of **5**

3) We are now, between our vendors and our in-house efforts, able to produce more than 700 transcripts[1] on an average work week. Prior to the COVID-19 pandemic, we averaged 300-400 hearing transcriptions per week.

4) As we worked to transition this workload, and our external vendors, to a fully virtual process, the number of new cases filed in federal court also increased.[2] This was a direct result of the agency's initiative to reduce the number of requests for administrative review pending before the Appeals Council, the final step of the administrative process. While we had planned for this increase, the combined effects of the pandemic-related disruptions and the increase in new court filings lead to a significant backlog in CAR preparation. However, as a result of our process improvements and increased production capacity from our contracted transcription vendors, we now have begun reducing our pending backlog. At the end of January 2021 we had 11,111 pending cases. At the end of February 2021 we had 10,679 pending cases, representing a decrease in our backlog of more than 400 cases.

---

[1] Individual cases often have more than one hearing to transcribe.
[2] In the last quarter of fiscal year 2020 and the first quarter of fiscal year 2021, we averaged more than 2,257 new case receipts per month, compared to an average of 1,458 new case receipts in the last quarter of fiscal year 2019 and the first quarter of fiscal year 2020. *See also Chief Justice Roberts' 2020 Year-End Report on the Federal Judiciary, Appendix Workload of the Courts,* available at https://www.supremecourt.gov/publicinfo/year-end/2020year-endreport.pdf ("Cases with the United States as defendant grew 16% [in FY20], primarily reflecting increases in social security cases and prisoner petitions.")

The following chart shows OAO's receipts, dispositions[3] and pending CAR workload for the first five months of FY2021.

| Time Period | New Court Case Receipts | Dispositions | Pending |
|---|---|---|---|
| OCT 2020 | 3,074 | 2,115 | 9,693 |
| NOV 2020 | 1,999 | 1,483 | 10,209 |
| DEC 2020 | 1,703 | 1,672 | 10,240 |
| JAN 2021 | 2,638 | 1,767 | 11,111 |
| FEB 2021 | 1,880 | 2,312 | 10,679 |

5) OAO continues to address the significant workflow fluctuations the agency has experienced since approximately March 2020. The following line graph tracks three different workflow measures since the beginning of FY2019 and how they intersect:

   a. **Green**: requests for review decided by the Appeals Council;

   b. **Blue**: new federal court cases filed by plaintiffs; and

   c. **Gold**: CARs docketed by the Office of the General Counsel.[4]

---

[3] While dispositions primarily include CARs for filing with the court, it also includes requests for remand to the ALJ for further actions, and other actions. https://www.ssa.gov/appeals/DataSets/08_National_New_Court_Cases_and_Remands.html

[4] For Appeals Council dispositions (green line) and new federal court case filings (blue line), the graph is based on publicly-available data through December 2020. *See* https://www.ssa.gov/appeals/publicusefiles.html. The data for more recent months, as well as all of the data for CAR docketing (gold line), are drawn from the agency's internal case tracking systems.

The graph shows the deviation from the average for each of these three workflow measures.[5]  Notably, this visual representation illustrates the rapid changes that began in March 2020 and continue to date.



6) Overall, the timeframe for delivering an electronic CAR in any individual case has improved.  The current average processing time is 138 days.  Although we remain subject to some constraints, we continue to work on increasing productivity by collaborating with our vendors and searching out and utilizing technological enhancements.  We ask for continued patience as we work to increase our efficiency and production of CARs, reduce the current backlog, and address rising court case filings.

---

[5] The averages are calculated since October 2018.  By way of example, in March 2020, OGC docketed about 80% fewer CARs than average, while the Appeals Council acted on about 60% more requests for review than average.

In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  March 17, 2021  /s/ Jebby Rasputnis
       Silver Spring, MD  Jebby Rasputnis

> Application GRANTED. The Commissioner shall file the administrative record no later than **June 22, 2021**. No further extension of time to file the administrative record will be granted. So ORDERED.
>
> _____
> Barbara Moses U.S.M.J.
> April 26, 2021

Page **5** of **5**